IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MIKE ALFONS CAMPA,<br><br>Defendant. | Cause No. CR 12-65-GF-BMM<br><br>**ORDER** |

## BACKGROUND

Mike Alfons Campa moved the Court to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 735; Doc. 742.) Campa is currently serving a sentence of 360 months on fraud-related crimes. (Doc. 523.) Campa has served approximately 144 months of his sentence. (Doc. 743 at 7.) Campa's scheduled release date is March 16, 2038. *See* Inmate Locator, www.bop.gov/inmateloc (accessed July 29, 2022).

Campa is currently incarcerated at Victorville Medium I FCI. *Id.* Victorville Medium I FCI is operating at a Level 3 Modified Operational Level as a result of a nationwide surge of COVID-19 cases resulting from the Omicron variant. *See* Modified Operational Levels, www.bop.gov/coronavirus/ (accessed July 29, 2022). Victorville Medium I FCI has 3 inmates and 2 staff members currently dealing with

1

COVID-19 and has had 533 inmate and 138 staff member COVID-19 cases throughout the course of the pandemic. *See* COVID-19 Cases, www.bop.gov/coronavirus/ (accessed July 29, 2022).

**I.     Availability of Relief Under 18 U.S.C. § 3582**

The First Step Act amended the United States Code to "promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). The First Step Act amendments to 21 U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 3582(c)(1)(A) prove especially relevant to Campa's motion.

Where, as here, a motion for a sentence reduction is well taken, the Court may modify a term of imprisonment following a finding that "extraordinary and compelling reasons warrant such a reduction." *Id.* When deciding whether to reduce a sentence, the Court must consider the factors set forth in 18 U.S.C. § 3553(a), and whether the reduction proves "consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)–(2).

Congress has not defined those circumstances that rise to the level of "extraordinary and compelling," except to say that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t); *Brown*, 411 F. Supp. 3d at 448. The law instead directs the Sentencing Commission to issue a policy statement in which it describes "what should be considered extraordinary and compelling reasons for

sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t); *Brown*, 411 F. Supp. 3d at 448.

The relevant Sentencing Commission policy statement lies in USSG § 1B1.13, titled Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) ("Policy Statement"). Notably, the Sentencing Commission has not amended the Policy Statement since passage of the First Step Act. *See United States v. Haynes*, 456 F. Supp. 3d 496, 507 (E.D.N.Y. 2020); *Brown*, 411 F. Supp. 3d at 448. A number of district courts have noted the unlikelihood of the Sentencing Commission updating the Policy Statement in the foreseeable future, as the Sentencing Commission requires four voting Commissioners to adopt a proposed amendment, and currently has only two voting Commissioners. *See, e.g., Haynes*, 456 F. Supp. 3d at 510 n.20; *Brown*, 411 F. Supp. 3d at 449 n.1; *United States v. Cantu*, 423 F. Supp. 3d 345, 347–48 n.1 (S.D. Tex. 2019); *United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *1 n.3 (D. Utah Feb. 18, 2020); *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Handerhan*, No. 110-CR-00298, 2019 WL 1437903, at *1 n.4 (M.D. Pa. Apr. 1, 2019).

The "Commentary" to the Policy Statement lists five "Application Notes," the terms of which evidence the Policy Statement's inapplicability to the amended § 3582(c)(1)(A). *See* USSG § 1B1.13 n.1–5. Note 1 lists those circumstances that

qualify as "extraordinary and compelling," including the defendant's medical condition, age, family circumstances, and "Other Reasons." *Id.* n.1(A)–(D). The "Other Reasons" subdivision to Note 1 provides as follows: "As determined by the Director of [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id. n.1(D) (emphasis added). Notes 4 and 5 likewise "speak plainly to the BOP's exclusive gate-keeping authority pre-[First Step Act]." *Haynes*, 456 F. Supp. 3d at 508. Note 4 provides, for example, that a "reduction under this policy statement may be granted only upon motion by the Director of the [BOP] pursuant to 18 U.S.C. § 3582(c)(1)(A)." USSG § 1B1.13 n.4 (emphasis added).

The pre-First Step Act Policy Statement does not account for amendments to § 3582(c)(1)(A), namely, removal of BOP's sentinel authority over sentence reduction petitions and extension to defendants of the right directly to move for a sentence reduction. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). The Policy Statement instead contemplates only motions filed by the BOP Director. *Id.*; *see also* USSG § 1B1.13.

When the First Step Act's amendments of § 3582(c)(1)(A) became effective, a split in authority emerged over whether the Policy Statement at USSG § 1B1.13 remained "applicable" to § 3582(c)(1)(A) motions directly filed by defendants. *See*

*Beck*, 425 F. Supp. 3d at 579 (quoting § 3582(c)(1)(A)(i)'s requirement that a court's sentencing reduction must be "consistent" with any "applicable" policy statements); *Cantu*, 423 F. Supp. 3d at 351 ("Given the changes to [§ 3582(c)(1)(A)], the policy-statement provision that was previously applicable . . . no longer fits . . . and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of sentence-modification provisions under § 3582." (emphasis in original)); *Haynes*, 456 F. Supp. 3d at 511–13 (citing "at least twelve" other federal district courts that have held the Policy Statement's "extraordinary and compelling reasons" list to be unexhaustive for defendants' direct sentence reduction motions).

The Ninth Circuit subsequently issued its decision in *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021). The *Aruda* decision makes clear that the Policy Statement at USSG § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." 993 F.3d at 801. Where a court considers a sentence reduction motion directly filed by a defendant under the First Step Act, the substantive standards for what may qualify as extraordinary and compelling expand beyond the bounds of guidance provided in USSG § 1B1.13's Policy Statement Application Notes. *United States v. Aruda*, 2021 WL 1307884, at *4 (9th Cir. Apr. 8, 2021); *see also Haynes*, 456 F. Supp. 3d at 511–13; *Cantu*, 423 F. Supp. 3d at 350–52; *Beck*, 425 F. Supp. 3d at 578–80 (M.D.N.C. 2019); *Brown*,

5

411 F. Supp. 3d at 451.

Although the Policy Statement may provide helpful guidance, *see United States v. Booker*, 543 U.S. 220, 245 (2005), "it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." *Beck*, 425 F. Supp. 3d at 579; *see also United States v. McCoy*, 981 F.3d 271, 282 n.7 (4th Cir. 2020). The Court will look to additional considerations outside those listed in the Policy Statement to determine whether extraordinary and compelling circumstances compel a reduction in Campa's sentence.

## II.  Whether Campa has Demonstrated Extraordinary and Compelling Reasons

Despite this Court's determination that it has discretion to provide relief, Campa still must demonstrate that extraordinary and compelling reasons support a reduction of his sentence. *Maumau*, 2020 WL 806121, at *5. Campa has cited in support of his motion the COVID-19 pandemic and Campa's age and underlying health conditions. (Doc. 743 at 2.)

With respect to Campa's concerns regarding the COVID-19 pandemic, the Court consistently has noted that correctional facilities create a high-risk environment for the spread of COVID-19, which poses a particular danger to prisoners with pre-existing conditions. *See For People Living in Prisons and Jails*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-

ncov/need-extra-precautions/living-prisons-jails.html (Accessed July 29, 2022). Campa's history of heart issues and his chronic obesity increase his risk of becoming seriously ill should he contract COVID-19. *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (Accessed July 29, 2022). Campa's age also places him at increased risk of COVID-19. *COVID-19 Risks and Vaccine Information for Older Adults*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/aging/covid19/covid19-older-adults.html (Accessed July 29, 2022). Campa previously contracted COVID-19 while incarcerated (Doc. 743 at 5) and remains at risk of contracting the disease again. *See COVID-19 Cases*, www.bop.gov/coronavirus/ (accessed July 29, 2022). (indicating active cases at the time of filing).)

It is impossible to surmise exactly how likely Campa is to become ill again, but recent studies indicate that there are significant chances of a person developing long-term health impacts after contracting COVID-19. *See* Maxime Taquet et al., *Incidence, co-occurrence, and evolution of long-COVID features: A 6-month retrospective cohort study of 273,618 survivors of COVID-19*, PLOS Medicine, Sept. 2021; *See COVID-19 Cases*, www.bop.gov/coronavirus/ (accessed July 29, 2022). Campa's vaccinated status will provide some measure of protection, but the longer he remains in a confined facility, the longer he remains at higher risk. The

Court determines that COVID-19 poses a continued risk to Campa's health. In light of the Covid-related concerns for Campa's health, the Court will reduce Campa's sentence to 300 months.

The Court determines that extraordinary and compelling reasons exist to reduce Campa's sentence, but not to grant Campa's motion for compassionate release effective immediately. Due to the extraordinary and compelling reasons argued by Campa, however, the Court will reduce Campa's sentence to 300 months.

Reducing Campa's sentence to 300 months comports with the 3553(a) sentencing factors. Campa has a criminal history category four and a total offense level of 37. (Doc. 521.) Campa's extensive criminal history over the course of twenty years demonstrates that Campa continues to pose a risk to the community at this time. (Doc. 745 at 3.) Campa continued his criminal behavior even while he was awaiting his sentencing for other offenses. (Doc. 525 at ¶¶ 52, 72.) Campa's conduct included obstruction of justice by contacting his wife and co-defendant, Suzette Gal, contrary to the Court's order. (*Id.* at ¶ 52.) Campa's relatively high criminal history category, total offense level, his obstruction of justice, and the persistence of his criminal conduct over two decades justifies the length of his reduced sentence as compared to other fraud defendants. *See, e.g.*, *United States v. Conti*, 4:13-cr-00065-BMM-3, Doc. 308, (60 months); *United States v. Moore*, 4:17-cr-00042-BMM, Doc. 175, (125 months).

Accordingly, **IT IS ORDERED**:

Campa's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 735; Doc. 742) is **GRANTED, IN PART, AND DENIED, IN PART**. The Court reduces Campa's sentence to 300 months.

DATED this 11th day of August, 2022.

_____
Brian Morris, Chief District Judge
United States District Court